UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM H., | ) |
|  | ) |
|     **Plaintiff,** | ) |
|  | ) |
| v. | )    Case No. 4:23-CV-146-CDL |
|  | ) |
| MARTIN O'MALLEY,[1] | ) |
| Commissioner of the | ) |
| Social Security Administration, | ) |
|  | ) |
|  | ) |
|     **Defendant.** | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c). For the reasons set forth below, the Court **reverses** the Commissioner's decision and **remands** the case for further proceedings.

**I.**      **Standard of Review**

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The

---

[1] On December 20, 2023, Martin O'Malley was sworn in as the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), O'Malley is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)).  Thus, the Court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

II.   **Background and Procedural History**

The plaintiff applied for supplemental security income benefits on January 8, 2019, alleging a disability onset date of the same date. R. 124. The plaintiff alleged that he became disabled due to a combination of conditions, including depression, anxiety, a

learning disability, and hearing problems. R. 124-125. He was 40 years old on the amended alleged onset date. R. 124.

The plaintiff graduated from high school, attending mostly special education classes, and testified that he is able to read and write. R. 52, 59. The plaintiff testified that he has not worked since approximately 2004. He has had trouble keeping jobs due to performance problems. R. 107-108. He has had tubes placed in both ears twice. R. 114.

In October of 2019, plaintiff was hit by a truck while he was walking across a road. He had multiple surgeries to repair pelvic fractures resulting from the accident. *See* R. 30-31. The plaintiff testified that he uses a walking stick and can only walk for 15 to 20 minutes before needing to rest. Sitting is painful. The plaintiff spends most of his time lying down, but even then, he has pain that persists, "kind of like an ice cream headache." R. 63-64.

The plaintiff is able to feed and bathe himself, cook, do laundry, and go to the grocery store four blocks away. R. 56-58. However, chores take a long time to complete because he becomes distracted and needs to take breaks. R. 61. He finds it "really difficult" to be around other people and has trouble expressing anger. R. 60-61. Before the Covid-19 pandemic, he was being treated for depression and anxiety through a government health care agency, but he stopped going due to transportation and other pandemic-related problems. R. 62.

In March 2022, the plaintiff testified that he had recently become homeless and had no income. R. 48-51. He has a medical marijuana card and uses marijuana "just about every day." R. 55. He receives food stamps and government-provided health care. R. 56.

The Commissioner denied plaintiff's application on initial review and on reconsideration. After a telephonic hearing, an Administrative Law Judge (ALJ) denied benefits. In a decision dated August 21, 2020, the ALJ found the plaintiff has severe impairments but that he retains the ability to perform work existing in significant numbers in the national economy, at all exertional levels but with environmental and mental functional limitations. *See* R. 152-170.

On November 24, 2020, the Appeals Council (AC) granted the plaintiff's request for review, vacated the ALJ's decision, and remanded plaintiff's application for further proceedings. R. 171-172. The AC directed the ALJ on remand to give further consideration to (1) the nature and severity of plaintiff's bilateral hip fractures and (2) the plaintiff's maximum residual functional capacity (RFC), with appropriate supporting rationale and references to specific evidence in the record. *See* R. 19. On remand, a different ALJ held a telephonic hearing on March 3, 2022, in which plaintiff and a Vocational Expert (VE) testified.

On March 30, 2022, the second ALJ denied benefits, finding at step five that plaintiff was not disabled before or after the October 2019 accident. The AC denied review in a decision dated August 17, 2022, rendering the ALJ's March 30 decision final. Plaintiff filed a timely appeal in this Court after receiving an extension. *See* Doc. 2; *cf.* R. 1. Accordingly, the Court has jurisdiction to review the ALJ's March 30, 2022 decision under 42 U.S.C. § 405(g).

**III.    The ALJ's Decision**

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work. The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id.*

Here, at step one, the ALJ found that the plaintiff has not performed substantial gainful activity since his alleged onset date of January 8, 2019. (R. 22). At step two, the ALJ found that the plaintiff has severe impairments, including major depressive disorder, anxiety disorder, learning disorder, and autism spectrum disorder. The ALJ determined that, beginning on the date of plaintiff's accident, October 25, 2019, the plaintiff also has

5

a severe impairment of bilateral hip fractures. At step three, the ALJ found that plaintiffs' impairments do not meet or equal a Listing.

At step four, after considering the entire record, the ALJ determined that, prior to October 25, 2019, the plaintiff had the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: The [plaintiff] could understand, remember, and carry out simple, repetitive tasks. The [plaintiff] could tolerate occasional interaction with coworkers and supervisors, but public contact should not have been a part of the job duties. The [plaintiff] could adapt to occasional changes in a work setting.

R. 25. Beginning on October 25, 2019, the ALJ found plaintiff can perform

> sedentary work as defined in 20 CFR 416.967(a) except he has the following limitations. The [plaintiff] is able to lift or carry, push or pull ten pounds occasionally and less than ten pounds frequently. The [plaintiff] can sit for six hours out of an eight-hour day, and stand or walk a combined total of two hours out of an eight-hour day. The [plaintiff] can occasionally climb ramps or stairs, but should avoid climbing ladders, ropes, or scaffolds. The [plaintiff] can occasionally balance and stoop, but should avoid kneeling, crouching, and crawling. The [plaintiff] can understand, remember, and carry out simple, repetitive tasks. The [plaintiff] can tolerate occasional interaction with coworkers and supervisors, but public contact should not be a part of the job duties. The [plaintiff] can adapt to occasional changes in a work setting.

R. 28. The ALJ indicated that, in making these findings, he considered all of plaintiff's symptoms in connection with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and Social Security Ruling (SSR) 16-3p, as well as medical opinions and prior administrative findings, in accordance with the requirements of 20 C.F.R. § 416.920c. R. 28-29.

The ALJ concluded at step four that plaintiff has no past relevant work. Thus, the ALJ proceeded to step five. Based on the VE's testimony as to a hypothetical claimant with the plaintiff's age, education, work experience, and RFC, the ALJ found that prior to October 25, 2019, plaintiff could perform the requirements of representative occupations, including:

> ***Dishwasher***, Dictionary of Occupational Titles (DOT) # 318.687-010, medium exertion, unskilled, specific vocational preparation (SVP) level 2, with 280,000 such jobs estimated in the national economy;
>
> ***Bulk food wrapper***, DOT # 920.587-018, medium, unskilled, SVP level 2, with 165,000 such jobs estimated in the national economy; and
>
> ***Laundry worker I***, DOT # 361.684-014, medium, unskilled, SVP level 2, with 136,500 such jobs estimated in the national economy.

R. 34.

The ALJ found that, beginning October 25, 2019, plaintiff could perform the requirements of representative occupations, including:

> ***Table worker***, DOT # 739.687-182, sedentary exertion, unskilled, SVP level 2, with 25,000 such jobs estimated in the national economy;
>
> ***Dowel inspector***, DOT # 669.687-014, sedentary, unskilled, SVP level 2, with 7,800 such jobs estimated in the national economy; and
>
> ***Patcher***, DOT # 723.687-010, sedentary, unskilled, SVP level 2, with 7,400 such jobs estimated in the national economy.

R. 34.

Accordingly, the ALJ found plaintiff not disabled at step five.

IV.     **Discussion**

The plaintiff argues that the ALJ (1) failed to properly address the prior administrative findings, (2) identified jobs at step five that conflict with his RFC findings, and (3) ignored significantly probative evidence that the plaintiff requires a walking cane and has additional limitations caused by shoulder pain. The Commissioner argues that the ALJ properly considered the medical and other evidence in the record and that substantial evidence supports the ALJ's decision.

A.      **Prior Administrative Findings**

The plaintiff contends the ALJ did not adequately address evidence, including prior administrative findings in the record, regarding his hearing impairment. The ALJ's decision must articulate how he considered the medical opinions or prior administrative medical findings from each medical source. 20 C.F.R. § 416.920c(b)(1).[2] The most important factors for the ALJ to consider are supportability and consistency, and the ALJ's decision must explain how he considered those factors in determining persuasiveness of a medical source's medical opinions or prior administrative medical findings. *Id*. § 416.920c(b)(2). Supportability refers to the extent that a medical source's opinion is supported by "relevant . . . objective medical evidence and supporting explanations" from the same medical source. 20 C.F.R. § 416.920c(c). Consistency involves comparing the opinion with evidence "from other medical sources and nonmedical sources." *Id*. The ALJ

---

[2]    For claims filed on or after March 27, 2017, such as the plaintiff's claim here, the Commission does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinions." 20 C.F.R. § 404.1520c(a).

must also consider the medical source's relationship with the claimant, specialization, and other factors, but generally, the ALJ's decision is not required to specifically address those additional factors. *Id*.

Shelby Stephenson, Au.D. performed an audiology consultative examination of the plaintiff on May 14, 2019 and performed tests including otoscopy, tympanometry, and conventional audiometry tests of speech reception and recognition. She diagnosed mild to moderate mixed conductive and sensorineural hearing loss in the left ear, with "grossly normal hearing sensitivity" in the right ear. Speech recognition threshold testing measured normal on the right side at 20 decibels but outside the normal range at 35 decibels on the left side. Word recognition testing using CNC (i.e., consonant-nucleus-consonant) words was performed at the 40-decibel sensation level, with scores of 100% recorded bilaterally. R. 565-566.

On initial review of the plaintiff's disability application in 2019, state-agency reviewing consultant William Spence, M.D. addressed the then-existing medical records, including a summary of key portions of Dr. Stephenson's report. Citing Dr. Stephenson's audiology findings, Dr. Spence opined that the plaintiff would require environmental and communicative limitations. He rated plaintiff's communicative ability as limited on the left side. Dr. Spence accordingly assessed an RFC restricted to avoiding concentrated exposure to hazards such as machinery and heights. R. 127, 131-132.

The ALJ acknowledged that Dr. Spence had found plaintiff's hearing impairment necessitates communicative and environmental limitations in the RFC. However, the ALJ found Dr. Spence's opinion

> unpersuasive and not supported by the May 14, 2019 examination of Dr. Stephenson that showed word recognition testing using consonant-nucleus-consonant words at 40 decibel stop loss[sic] was 100% for the [plaintiff's] left ear and 100% for his right ear. Additionally, the opinion of Dr. Spence is inconsistent with the October 28, 2019 examination of Dr. Sparkman that showed the [plaintiff's] hearing was normal.

R. 22.³ Thus, the ALJ ostensibly addressed the supportability and consistency factors, as required under § 416.920c(b)(2).

In this instance, however, the ALJ's supportability analysis is legally flawed. Dr. Spence indicated that he relied substantially on the audiology exam findings in reaching his conclusion about plaintiff's communicative limitations. Dr. Spence noted multiple details in Dr. Stephenson's report, including the same finding cited by the ALJ in connection with the supportability factor—namely, the plaintiff's score of 100% on the word recognition test.

However, the ALJ's decision did not adequately explain why that clinical finding is contrary to Dr. Spence's interpretation. It is not obvious to a lay observer why the word recognition testing score indicates that plaintiff does not have the limitations Dr. Spence

---

³ Dr. Stephenson's report states: "Word recognition testing using CNC Words at 40 dB SL was 100% for the left ear and 100% for the right ear." (R. 565). It appears that the ALJ incorrectly transcribed "SL" as "stop loss", rather than "sensation level." *See* Merriam Webster, *sensation level* (noun): "a measure in decibels of the intensity of an auditory stimulus that is above an individual's threshold"; *available at* https://www.merriam-webster.com/dictionary/sensation%20level; *see also* Iowa Head and Neck Protocols: How to Read an Audiogram, *available at* https://medicine.uiowa.edu/iowaprotocols/how-read-audiogram (last modified Nov. 20, 2023) (defining word recognition score as "[percent] of words discerned at threshold.").

identified.[4] Notably, as documented in Dr. Stephenson's report, word recognition testing was conducted at different decibel levels for the left and right ear (60 decibels in the right ear; 75 decibels in the left ear). As such, the plaintiff's word recognition score does not appear to dispel evidence that plaintiff has limited hearing in his left ear.

The ALJ concluded that this clinical data point did not support the communicative and environmental limitations Dr. Spence found necessary. However, to the extent the ALJ viewed the word recognition score as evidence that plaintiff requires no hearing accommodations, the ALJ failed to sufficiently explain or support this conclusion. Nothing in the ALJ's analysis indicates the ALJ had any specialized knowledge about the significance of the word recognition score—and notably, as explained *supra* n.3, the ALJ appears to have misconstrued the abbreviation "SL" as used in Dr. Stephenson's report. The ALJ was not at liberty to substitute his own lay interpretation of plaintiff's word-recognition score for that of a medical professional.

Here, there is uncontroverted evidence that plaintiff has some hearing loss in the left ear. Although there is evidence that he is able to compensate to some extent due to having normal hearing in his right ear, at least one medical source opined that plaintiff would require limited exposure to hazards and have communication limitations due to his hearing loss in the left ear. *See* R. 132.[5] In the absence of other, substantial evidence contrary to

---

[4] Neither Dr. Spence's opinion nor the ALJ's decision explained what a word recognition score represents.

[5] Dr. Spence cited Medical-Vocational Rule 204.00, which states that "[e]nvironmental restrictions ordinarily would not significantly affect the range of work existing in the national economy for individuals with the physical capability for heavy"

Dr. Spence's opinion, the ALJ's supportability reasoning amounts to a substitution of the ALJ's lay interpretation of objective medical data for that of a qualified physician, which is improper. 20 C.F.R. § 404.1520c(c)(1); *see Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); *Linam v. Kijakazi*, Case No. Civ. 20-63 GJF, 2021 WL 3542661, at *7 (D.N.M. Aug. 11, 2021) (emphasis in original) (explaining that "[t]he lesson *Winfrey* teaches is . . . that the ALJ cannot second-guess the basis upon which a medical professional came to a *medical* conclusion.").

While the ALJ did note records of various other examinations indicating that plaintiff had normal hearing or no "apparent" communication problems, none of those exams were for the purpose of hearing evaluation. *See* R. 22. The ALJ cited Dr. Sparkman's examination on October 28, 2019 where plaintiff reportedly "denied hearing loss" and examination "showed that his hearing was normal." *Id*. (citing R. 647-654). But the purpose of that encounter was not to assess plaintiff's hearing. It was an orthopedic trauma consultation for pelvic fractures, three days after the plaintiff was struck by a vehicle. R. 647. There is no evidence that Dr. Sparkman evaluated plaintiff's hearing at that time or examined his hearing any more than necessary to examine plaintiff's injuries from the accident.

---

or very heavy work. Thus, it is not clear that including environmental limitations in the RFC would have led to a different outcome, at least prior to the date of plaintiff's accident. However, the Medical-Vocational Rules do not include similar language applying to sedentary work, and the Court cannot find the error is harmless as to the time period beginning on October 25, 2019.

The defendant argues that the reconsideration findings of Roger Tims, M.D., support the ALJ's interpretation of the audiology data. Dr. Tims found plaintiff's physical impairments were nonsevere and did not impose any physical limitations in the RFC. *See* R. 143-144. But that is not the reasoning the ALJ articulated in the decision. In fact, the ALJ's decision did not appear to discuss Dr. Tims' opinion at all.

The ALJ's decision must be "evaluated based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *see also Knipe v. Heckler*, 755 F.2d 141, 149 n.16 (10th Cir. 1985) (holding that an ALJ's decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action). District courts "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2004). Here, the ALJ failed to adequately explain why he rejected Dr. Spence's opinion. This error requires remand. *See Winfrey*, 92 F.3d at 1023.

B.   **Other Alleged Errors[6]**

1.   **Reasoning Level**

The plaintiff argues that the ALJ erred by failing to resolve a conflict between his RFC finding and the jobs he identified at step five, which require Level 2 GED reasoning.

---

[6] The plaintiff's brief criticizes various other portions of the ALJ's decision. Some of his assertions are incongruous or illogical on their face. *See, e.g.*, Doc. 7 at 7 (disputing ALJ's *mental* RFC finding by suggesting ALJ improperly "disregard[ed] documented physical findings by a medical source"); *id*. at 10 (misstating language in *Hackett* by asserting court "has long agreed that a job requiring reasoning level three 'seems inconsistent with a job requiring reasoning level' two"). The Court has addressed distinct arguments to the extent they are reasonably discernible from the plaintiff's briefing.

The plaintiff contends Level 2 reasoning is inconsistent with a limitation to simple, repetitive tasks. However, the applicable case law does not support this argument. Tenth Circuit guidance indicates that a limitation to simple, routine or repetitive work does not necessarily preclude work requiring Level 2 reasoning. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that Level 2 reasoning "appears more consistent with" an RFC for "simple and routine work tasks"); *see also Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished) (rejecting argument that limitation to "simple, repetitive and routine work" is inconsistent with Level 2 reasoning); *Ray v. Comm'r of Soc. Sec.*, No. CIV-18-629-SM, 2019 WL 1474007, at *5 (W.D. Okla. Apr. 3, 2019) (unpublished) (finding that Level 2 reasoning does not, "on its face," conflict with an RFC limitation to simple work-related instructions and tasks; collecting cases); *cf. Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (unpublished) (citing Eighth Circuit holding that "a limitation to simple instructions is inconsistent with both level-two and level-three reasoning," but noting that Tenth Circuit has not ruled "whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions"). Accordingly, there was no apparent conflict between the ALJ's RFC determination and the identification of jobs with up to GED Level 2 reasoning at step five.

### 2. Physical RFC

The plaintiff argues that the ALJ failed to properly address evidence that, following the October 2019 accident resulting in hip fractures, the plaintiff has to use a cane or other assistive device for walking. Binding agency guidelines direct how an ALJ must evaluate a claimant's ability to perform less than a full range of sedentary work. *See* SSR 96-9p, 1996 WL 374185. Under SSR 96-9p, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."

Here, the ALJ explained why he found no such restriction necessary:

> Although there is evidence that the [plaintiff] has used assistive devices, the evidence does not demonstrate that these are medically required. Specifically, there is no medical documentation establishing the need for an assistive device to aid in ambulation and describing the circumstances for which it is needed.

R. 33 (citations omitted). The plaintiff does not dispute that the record lacks medical documentation showing that plaintiff requires a cane or walking stick and the circumstances for which is needed.[7] The plaintiff's brief argues, confusingly, that remand

---

[7] Although the record lacks such medical documentation, the Court notes that it is questionable whether substantial evidence supports the ALJ's conclusion that plaintiff can perform the stated RFC without the use of a cane. Notably, the most recent medical evidence discussed by the ALJ was dated June 2020, less than one year after plaintiff's accident. Moreover, plaintiff testified more than two years after the accident that he still needed to use a cane. However, the plaintiff failed to articulate this argument or to argue that the ALJ had a duty to develop the record further to assess plaintiff's physical RFC

is warranted to require further evaluation of whether the plaintiff can perform certain light and medium-exertion jobs, "even while using a cane." Doc. 7 at 12. But the ALJ assigned a restricted sedentary RFC for the time period beginning with plaintiff's accident. Thus, the plaintiff's brief does not assert any harmful error concerning his alleged need for an assistive device.

## V. Conclusion

For the reasons set forth above, the Court finds the ALJ failed to apply the proper legal standards in reaching the RFC determination, requiring remand. Therefore, the decision of the Commissioner finding Plaintiff not disabled is **reversed and remanded** for further proceedings consistent with this opinion.

**SO ORDERED** this 5th day of August, 2024.

Christine D. Little
United States Magistrate Judge

---

after the accident. Accordingly, any such arguments are waived at this juncture. Nonetheless, because plaintiff's case requires remand, plaintiff should be permitted to raise this issue on remand if he desires to do so.